Then the third case is City of Fort Collins v. Open International, 24-1152. Give us just a minute. Sir? Apparently you're very popular. Okay. You can start whenever you're ready. Thank you, Your Honor. I'm Laurie Webb Daniel, representing the defendants' appellants. I have only a few minutes to speak with you this morning. So, putting aside the points in our briefing as to why there's no fraud in this case, I'd like to focus on three reasons why the party's contract precludes the $20 million recovery that the district court ordered. First, the contract, which was heavily negotiated for about four months by sophisticated parties, includes verbatim every single representation that the city now challenges. Second, the contract contains specific merger and non-reliance clauses precluding and barring pre-contractual representations. Third, the contract provides a specific remedy for breach of its warranties and representations and excludes other damages regardless of the theory of recovery. Now, I don't have a PowerPoint for you. What I'd like is for you to visualize a slide that has six bullet points summarizing why Colorado law requires a reversal of this judgment. First, where sophisticated parties by contract allocate the risks and costs, if their relationship goes sideways, they should be held to their bargain. This, of course, was the premise that the Colorado Supreme Court adopted in the town of Alma case and has repeated it throughout, including the most recent decision on the economic loss rule in the mid-century case, which we provided through supplemental authority decided just a few weeks ago. Second bullet point. Under Colorado law, the economic loss rule bars tort recovery where the tort duties are memorialized. Memorialized is the word that the Colorado Supreme Court uses time and again when those duties are memorialized in the contract. Again, the recent decision reaffirmed, restated this principle that is bedrock principle of Colorado law. Counsel, I know you have six bullet points on this slide, but I want to ask you about that one. Okay. You did submit a 28-J on this case mid-century about Colorado law and the economic loss rule, but it seems to reaffirm the carve-out for intentional torts, such as the one that the jury found here against your client. So how can we, now looking at it, say as a matter of law that that jury verdict must be overturned when the Colorado Supreme Court told us that an intentional tort does not fall under the economic loss rule? That's not exactly what it said, actually, Your Honor. What it said, it distinguished willful negligence from intentional conduct, and this comes from the Bermel footnote 6, where Bermel had referred to willful negligence in exculpatory clauses not allowing it, and it makes a statement generally. But this was an intentional tort, right, that the jury found against your client? Yeah, absolutely. All right, so here's what it did say in mid-century. We've noted the economic loss rule generally should not apply to intentional tort claims. Right. So I'm having a hard time understanding. So it's the word generally. It's the word generally because, number one, that was noted, and it also was not held because it was not reached in mid-century. It's a footnote. It's dictum. But it was held previously in Bermel, wasn't it? No, it wasn't, Your Honor. It was in footnote 6. That was a theft, a civil remedy for criminal conduct. So it was not holding. And, in fact, the Colorado Supreme Court has never held a bright-line rule. It says generally, and as noted in the case law, there has been a split among the courts of appeals. However, I'd say the weight of the authority supports our position. So with that, and let me just say one other thing. There's no case from Colorado Supreme Court or any Colorado appellate court that has allowed a tort recovery where the circumstances here are all present. That's why I'm mentioning complete integration, repeated, the merger clause, and the exclusion of damages. What about Van Ries? No, Van Ries didn't include that, Your Honor. Van Ries specifically, I mean, I think, Justice Syed, specifically differentiated for web-related, for- Pre-contractual. Pre-contractual differentiating from- Saying that a contract for web-related services that claims not only that Unlet had breached his obligations under the contract, claims that aren't at issue, but also that it wrongfully induced him into entering a contractual relationship, knowing that it did not have the capability to perform any of the web-related services under our case law, the latter allegation of state of violation of tort duty that is independent of the contract. That's exactly what Ms. Walder testified that the problem was with OPEN, is that they induced Fort Collins into entering into this contract by externally grading A when they didn't currently have that capability. All right. A couple of things about Van Ries. First, it did not have a merger clause. It did not discuss an integration clause. Right. I'm just talking about the economic loss. Well, you know, they are distinct but overlapping doctrines. And, you know, I would submit that, you know, we can, as the economic loss doctrine has evolved since Van Ries, that courts have applied it to, applying Colorado law, have applied it to fraud and the inducement. And I can give you a couple of cases. They're cited. And before I do that, though, I'd like to refer the court to the health bank decision. This is in the Utah, Utah Supreme Court, but referring to Van Ries. And say, Justice Lee says, I disagree. Well. He quotes Justice Iden and says, I disagree with her. It was, I think, clarifying where you have absolutely every single thing to say. Well, what was spoken and then memorialized is, it shouldn't be any different. But let me give you a citation to two cases that are applying Colorado law. Even where there is two fraud, and to bar fraud in the inducement cases, even when there's no murder clause and no limitation exclusion on damages, where the representation is included and memorialized in the contract. That's the REMAX case. It is a district court case. But it pointed to three of the representations were not memorialized. One of them was, it was one that was memorialized, and I says, no. That's barred. And there's also the recent case that I cited in our reply, a very smart case. It involved a pre-contractual, a nondisclosure. The plaintiff was arguing there's a common law duty to disclose latent defects. But this was also a contractual disclosure duty, and the court found it was barred. It was assumed memorialized. So just, you know. Why would false misrepresentations about capabilities to perform be distinct from the contract itself? Well, so what was represented was, yes, there was this grading. It was represented before. But just to be sure that the parties were totally clear on what they had negotiated over four months, they included the RFP and the same functionality matrix completely. Every bit of it was repeated, memorialized, same representations, same condition, same truth or falsity, whatever. It's there. This is what parties do when they bargain for risks and allocations. It fits well under the economic loss doctrine, but please do not lose sight of the integration clause. That's very important because it's actually, it's an independent basis for saying, wait a minute, you cannot have this tort recovery where there's been express non-reliance. And this is in several places in the preamble. It's an integration. The warranties and reps say, we are warranting everything in that functionality matrix. And it's a lot of warranties in there. But you cannot rely, you know, disclose no pre-contractual representations. And that distinguishes this case. So the integration clause, is that the crux of your argument? In other words, if you take that out, you say you would lose? No, Your Honor. We also have, in addition to that, and in addition to the complete repetition and inclusion of all the other representations, we have the, and this was my, maybe my last bullet point. Sorry about the slide. And I'm going to quote from the Dreamfinder. Dreamfinders did rely on post-contractual representations, but it has an alternative, an alternative basis for applying the economic loss rule. And I'm going to quote. One of its headings is, quote, under economic loss rule, a plaintiff may not assert tort claims to recover damages expressly excluded under its contract. It also has some, a nice quote about not being able to, you know, cloak your contract claim and tort theories in order to evade the contractual remedies that you bargained for. That, it describes Dreamfinders as a separate grounds for economic loss rule. Right after that, on page 123, does the court then say, but the court acknowledged that the duty not to make fraudulent misrepresentations before entering the contract, quote, is not applicable here because Weyerhaeuser's alleged conduct occurred after the parties entered into the contract. Yeah, that's right. So if I enter into a contract with you and then I lie about, you know, what I'm planning to do, sure, I can see that that would be clearly covered under any state's integration clause or merger clause. But here it's a little different, isn't it? It's saying, let's say you hired me to mow your lawn. And I tell you, oh, I have mowed thousands of lawns. I've never had a customer dissatisfied. And you hire me. And then I enter into warranty. You know, I will cut your grass just perfectly. And then I start cutting the grass and I don't know how to turn the lawn mower on. And you say, well, I'd never. OK, fine. Your judgment proves that, correct? That does me no good. I would have hired Judge Federico to mow your grass if I had known you were so incompetent. Isn't that exactly what we have here? It's not exactly lying after the fact. It's lying before the fact and precluding other people from getting the job. OK, Your Honor, I will give you a straight answer on this. In Dreamfinders, it is an additional basis, it says. So you need to look at that. If you read the opinion, it says that. And, by the way, the cases that the city has cited that are distinguishing, they're rejecting it, they distinguish those cases and say there is no exclusion of these tort damages. They're saying it allows. So they're observing that contract. I'd like to save the rest of my time for rebuttal. Thank you. Good morning. May it please the Court. My name is Case Collard and I'm representing the city of Fort Collins. I think Ms. Daniels' representation of Colorado law was a little narrow and a little bit misleading. I think that the cases have been very consistent and I'd like to try to reconcile those for you all. The relatively recent Viola Water Tech's case that is cited in the briefing says, fraudulent concealment was not barred because otherwise it, quote, would effectively insulate a party to a contract from their own fraudulent actions and would effectively allow contract law to swallow valid tort law fraud claims. So that's the economic loss rule portion of this, which is separate from the integration clause, which I will get to right now. But I think from an economic loss rule perspective, Van Ries is the right case. No Colorado, I disagree with her representation of REMAX and Smart V. Stropas. No Colorado court, court of appeals, Supreme Court, has looked at a pre-contractual fraud, a situation like this, a competitive RFP where they lied to get the contract over eight other competitors and that somehow that they would be insulated by the economic loss rule. No Colorado court has held that. The REMAX case and the Smart V. Stropas case, to close the loop on that, are different because in REMAX there were existing contracts. It was a series of contracts. Smart V. Stropas is actually a Meth House case, and that was in the contract itself. While I'm on economic loss rule, I think the clarifying issue, whether you're getting to health bank and the Utah court and all of those things, is to really go back. Town of Alma starts the modern line of cases in Colorado on economic loss rule, but the go to the rule. You don't even need, and I appreciate your honor citing the recent language in mid-century that does have the word generally, but you don't need to go to that language where generally intentional torts are not part of the economic loss rule because the test itself, the three-part test, and we cited the Levin case for that, but it's also in Hammond, I think, and BRW, this three-part test to determine if there's an independent duty. And even in the Town of Alma case, there's a footnote where the Supreme Court said, we kind of wish we could rename the test the independent duty test because that's a little better than the economic loss rule. And so if you go through that test, I won't do it with your honors because we've done it, and I think it's pretty clear under Van Rees and all the other precedent that we pass with fine colors. The economic loss rule simply doesn't apply. So I would like to mention integration because that's the other piece, and I don't want to get them too confused. There's a separate line of cases. In the Keller case, which I think is interesting because it's a Tenth Circuit request for a special question from the Colorado Supreme Court, and that's really the case on integration clauses that I think your honors should turn to. Here's a quote from Keller. A seller should not be allowed to hide behind an integration clause to avoid consequences of a misrepresentation, whether fraudulent or negligent. So I think OPEN has kind of combed through the case law to find factual situations where perhaps there was a fraud that was not an independent duty, that was a duty in the contract, and then find language that's helpful to them. But overall, there was an independent duty not to lie. That's not really in dispute. There's an independent common law duty not to lie to get someone to enter a contract, as your honors' example about Mowing Grass shows. And everybody who responded to the RFP, not just OPEN, had that duty. There were additional contractual duties that were required, requirements, and the functional matrix did become a requirement of the contract, and they had to meet those requirements. But the contract also says that we're relying on OPEN's representations about their product. The city of Fort Collins was relying on those. And I think that reliance, it says in the contract, was reasonable, but there's also a lot of evidence in the record, and that this jury verdict was well supported with evidence kind of up and down the line here. And I can go through that, if your honors would like. But if you have any questions on economic loss rule or integration, I'd be happy to talk about those. Well, I do have a question about what you just said in terms of the merger clause. Once there was a contractual provision saying we are relying on that, wouldn't that have been precluded under the disclaimer of warranties? No, your honor. It's a separate issue because it doesn't change the independent duty rule. That's not a part of the economic loss or the independent duty test. Right. So I'm not asking about economic loss rule. Okay. On just the integration merger clause, to the extent that there was a contractual statement saying we are relying on your functional matrix, your internal grades, that would be integrated into the written contract. It's actually the opposite, your honor. And this, I think, is shown by a pair of cases. And so Keller was interpreted by Judge Moore twice in two separate cases. One in stake and shake where he found the integration clause was, and the language is that it has to be, it can't be a general integration clause. It has to be clear and specific. And he found that the integration clause in that stake and shake case, which we do cite, I think both sides cited it, is that it was clear and specific that there's no reliance on prior representations of profitability. And so that barred that claim. Then in Penceford four years later in 2019, he looks at another integration clause. And he comes out the opposite way. And he says these claims aren't barred. And he cites Keller again because it's a general integration clause. And he calls it, it doesn't have no representation language. And what that means is when you look at the integration clause, does it say, and this is from our integration clause in this case, section 18.15. So entire agreement and precedence. It said this agreement, including all exhibits, constitutes the final, complete, exclusive agreement between the parties with respect to the subject matter of this agreement and supersedes any prior contemporaneous agreement proposals, warranties, and representations. So it's about what constitutes the agreement. What are the promises in the agreement? What about that language that it supersedes any prior representations? Is that specific enough? No. And you can look both at Keller. Keller had much more specific language than this. And Penceford, I think, is a really nice contrast because he, it's pretty short. He talks about this no representation language. And the language you'd need here, to your point, Your Honor, to get this included in the integration. The city does not rely on any representation made by OPEN prior to signing this agreement. But it says the opposite of that. In the introduction to the agreement, it says the city is relying on OPEN's representations. So this, the agreements in this, our contract, the integration clause is generic when compared to how courts have treated them. And not only do we not have, sorry, the no representation and we're not relying on any representations, no reliance clause. We have a reliance clause. We are relying on your representations about your product. And I think there's a distinction, too, between the requirements that must be implemented and the capabilities that we have been told about and we are relying on as the basis for entering this contract. And frankly, we did have a contract claim until we elected our remedy. There was a breach of contract as well, but that's an election of remedies issue. That's not the verdict we're here about today. We're here about the intentional tort of fraudulent inducement. That occurred in March 2018 when they gave us the grades that were lies, that did not match their internal grading, along with grades about a portal that they didn't use, along with lots of other representations that support a fraud verdict months before a contract was ever entered. Anything else on integration or economic loss? I would just take a moment to talk about two waived arguments. There is an argument that one of the two defendants' open investments should not be a part of the judgment. That argument was not brought up until a Rule 52 motion two months after the verdict. And it's been waived. The Rule 52 motion was not even a correct motion since that is for non-jury trials. The case was tried with open as one entity. That was a strategic choice, open international and open investments made. We've litigated many cases with multiple defendants. And keeping that corporate separateness sometimes is the strategy to say, well, you'd have to prove alter ego to paint this conduct for this corporate entity. That's not what happened here. Open itself chose to litigate this way. Let me ask you about your first waiver argument, or maybe your second, of the 50A, that it wasn't brought up in a Rule 50 motion. It was brought up in an inapplicable Rule 52 motion. The inhomily is it really should have been a judge-tried issue. It's an equitable remedy. What the judge did was allow the jury to decide an equitable issue. And now this is not before us. Nobody's challenged that. But because the judge allowed a jury to decide an equitable issue, then Fort Collins comes in and says, well, this was tried by a jury, so you should have raised a Rule 50 issue. It seems quite anomalous since it really should have been an equitable remedy, and obviously the judge then at Stage 2, you know, takes it. But it wasn't like rescission and restitution all of a sudden, you know, surfaced as an issue once the jury rendered a verdict. It was always an issue. So it's kind of weird, isn't it? It's a weird question, I guess. But why can't we say that it was waived by raising it in Rule 52 when it should have been adjudicated as a judge-tried issue? So can I start by, it's an interesting question. It is not before your audience because it was not raised. But I do have an answer for that, which the argument that was waived is about liability of open investments, and that is 100% a jury question and was appropriately given to the jury and was not objected to at the time. The verdict form provided liability instructions. That's a jury question, a factual question. Even if you're, let's say there's only one claim, and it's for rescission and restitution, you're saying that's a jury issue? The liability question is a jury issue. We have a Seventh Amendment right to a jury on those issues, Your Honor. And the only thing in front of the court was remedy. It was an election. We had five minutes to elect. We elected rescission. The only thing left for the court was remedy. And I think we have a case on that. I'm sorry I wasn't able to flip to it while you were talking. But because it's common factual issues, she can't do anything on liability. She can't revisit liability. She can't choose not to apply rescission because there are common factual issues to liability that were decided by the jury, and that's a Seventh Amendment issue. Does it change our standard of review? On which issue? On just looking at, you know, we're here to look at the rescission, and as Judge Bachrach noted, that's an equitable remedy. Typically we give a lot of deference to jury verdicts, but here the jury verdict made certain findings, but then the judge takes it because it's an equitable remedy. No, it doesn't change your standard of review. It's still the same very deferential review to the jury's verdict because those factual issues were underlying liability. All the judge took was a restitution. All we had was a restitution hearing. There was no liability issues whatsoever. She made that clear on the record, and she made that clear, I think, in the briefing. And then all she did, we had a hearing on restitution. It was a combined order where she rejected some of the arguments that were made on Rule 52, and then she said, so I'm entering my restitution order. But in that hearing, all we did was talk about the damages categories. Or sorry, the restitution categories. Maybe I'm confused, but their whole argument is an open investment. There was no evidence that open investments committed fraud. All the Open International did. So back to Judge Federico's question, the only issue, part of this issue that is in disagreement, is on liability, as I understand it. Your Honor, that idea that there's no evidence that open investments committed fraud, that's what was waived. That's what they should have raised. If they thought that liability needed to be proven separately, I'll give you the key example. A verdict form where it says, did Open International commit fraud? Did Open Investments commit fraud? That would be the minimum, and that would have still been waived long before that, and we cited a case, it's the Miller Glass Containers v. Miller Brewing, and they had a defense, and they were said silent as the tomb on this defense. They actually tried to bring it up in that Miller case. They actually tried to bring it up for jury instructions, and the court said no, and the Fifth Circuit said, you can't lie behind the log and bring up a defense for the first time in jury instructions. This is even worse than that. Liability, the verdict entered, they said nothing for two months, and then they said it should have been separate. We should have had separate verdict instructions. Liability was established jointly as open. Every piece of evidence that went towards Open International's fraud, this is their framing, also went toward Open Investments' fraud because open was one and the same. I know you're just answering my question, which I appreciate, but it will give you about 20 seconds to finish up. Oh, I'm over. Sorry, Your Honor. If you all don't have anything else, I'll leave it there. All right. Thank you. Ready for some bullet points? Ready. Always ready. Yeah, I know. All right. On Open Investments. Number one, plaintiff had the burden of proof. Number two, Open Investments was a guarantor, broad guarantor, and was on the hook until there was an election of remedies. What we need to keep in mind is this election of remedies was not just between fraud and contract. It was whether there was going to be a ratification of the contract so the city would seek actual damages for fraud, in other words, the benefit of the bargain damages, or rescission. That did not occur until after the jury returned its verdict. Number three, or four, I'm losing track. The jury did not decide joint and several liability. This was a special verdict form under Rule 49. The jury answered a few questions. Liability was determined by the judge. Next bullet point. Rule 50 doesn't even come into play unless you've been fully heard on an issue. Open Investments was not fully heard on this issue. There was no, it was only a few questions that were submitted to the jury. There was no evidence as to Open Investments, and they were on the hook. If the city had affirmed the contract, gone for, still on the fraud claim, they were guarantor. They had no basis for raising this earlier than they did. This is a naming convention. Common defenses. Parties do that all the time, unrelated. There's no evidence, no alter ego evidence. The jury did not decide alter ego. Nothing there. So I see it's turned red. You can finish. I'm curious what your remaining bullet points are.  I think my opposing counsel got an extra minute or so, if I could. Well, I'm not going to give you an extra minute. He was the answer to my question, but I will let you briefly give me your bullets. So on the specifics of the merger clause, integration clause, look at section 2.3 of the contract. It disclaims reliance. Coffee Bean Colorado appellate decision enforces fraud in the inducement case. Integration clauses that are specific, it discusses Keller, and Keller does not disallow it. This is specific enough. REMAX says, on the other hand, the third representation concerns REMAX's ability to provide certain marketing services through its websites. Thus, the third alleged representation was made, and the parties negotiated and memorialized the obligations related to that, so it was barred under the economic loss doctrine. And then finally, I'll say, on the Viola case, it's a long, long decision, a little odd in some places, because it refers to incorporation of representation and being part of the contract and part of the representation. But anyway, what I want to say, since it's concluding, and I'll wrap up right now, it says, we therefore hold the economic loss rule does not bar Antero's fraud because, and then it talks about the fraud not being there. And then number two reason is, Antero is not using tort claims to pursue damages explicitly prohibited by the DBA. And that's exactly what we have here. Thank you, Your Honors. Let me, can I ask for the relief? You betcha. What would we want for you? Yeah. We would want you to reverse and render judgment as a matter of law on the fraud claim, but remit for the parties to have a new trial on the contract claims. Citi has its remedy, its contractual remedy. Open has a counterclaim. This should be remitted for a new trial on the contract, so everybody gets the remedy they deserve. Okay. Thank you. I did give you two minutes and 36 seconds, just for the record. Thank you. It is very well presented by both sides, and we appreciate your excellent briefs and your excellent advocacy today. We're going to take a ten-minute break and then come back for our last three cases. Thank you.